(98 App. Div. 467)

# CODY v. HADCOX.

(Supreme Court, Appellate Division, Fourth Department.   November 30, 1904.)

1. NOTES—WITNESSES—TRANSACTION OF DECEASED PERSON.

In an action on a note found among decedent's papers after his death, the maker was incompetent, under Code Civ. Proc. § 829, prohibiting a person from testifying with reference to a personal transaction with a deceased person, to testify what the note was given for, and that it was accommodation paper.

2. ACTIONS—INSTRUCTIONS.

Deceased, who was defendant's father-in-law, wrote him a letter inclosing a note for him to sign, which the father-in-law had indorsed; stating he wished defendant would get the money on the note, as the writer was short, and that, if the defendant could get the money, the writer would take care of the note at maturity if defendant could not. The note inclosed was not signed, but thereafter another note of similar tenor was similarly executed and discounted.  When it was executed, defendant was indebted to his father-in-law on two notes, one in the exact amount of the one executed.  The note so discounted was found among the father-in-law's papers after his death, whereupon suit was brought, which defendant defended on the ground that the note was accommodation paper.  *Held* that, since the letter requesting the execution of the note was fairly susceptible of a construction that the note was given for defendant's debt, an instruction that, if the jury found that the note was made pursuant to the letter, they should find for defendant, was error.

Appeal from Trial Term, Oneida County.

Action by Mary R. Cody, as executrix of the estate of James A. Carey, deceased, against Robert H. Hadcox.  From a judgment in favor of defendant, and from an order denying the plaintiff's motion for a new trial on the minutes, plaintiff appeals.   Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Matteson & De Angelis, for appellant.
Charles H. Searle, for respondent.

WILLIAMS, J.   The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event.

The action was upon a promissory note for $300.   The defendant was the maker, and the deceased, represented by the plaintiff, the payee. The note was made payable at a bank, and was apparently discounted and subsequently taken up by deceased.   It was found among his papers after his death.   The defense was that the note was made for the accommodation of the deceased; that there was no consideration for the defendant's giving it, and, the deceased having taken it up, his personal representative could not recover the amount thereof from defendant.   This question was submitted to the jury as one of fact, and the jury found for the defendant.   The evidence was sufficient to support the verdict under the charge as given by the court, and the only suggestion made as a reason for reversal of the judgment is that the charge was wrong, and really left little, if anything, to the jury.   In

¶ 1. See Witnesses, vol. 50, Cent. Dig. § 664.

order to appreciate this claim, we need to state a few facts not in dispute:

The deceased had two married daughters. The defendant was the husband of one of the daughters, and was called by deceased "Rob." The plaintiff was the other daughter, and her husband was called by deceased "Frank." The deceased lived with the plaintiff and her husband at Vernon Center; was postmaster at that village. Defendant lived on a farm near Deansboro, about 6½ miles from Vernon Center. The deceased wrote the defendant a letter, and inclosed in it a note. The letter read as follows (leaving out immaterial words):

"Vernon Center, Sept. 24, 1886.

"Rob: I wish you would get the money on this note as I am short and don't want to ask Frank for any. I may be over S., but doubtful as I have had a bad boil on back of neck. If you are coming over S. perhaps the bank would cash it on Sat. * * *                Your Father.

"P. S. If you get the money on the note I will take care of it at maturity if you can't."

The note read as follows:

"Vernon, N. Y. September 27, 1886.

"Four months after date I promise to pay to the order of James A. Carey three hundred dollars ($300), at the National Bank of Vernon. Value received. With interest."

"[Unsigned.]

"[Indorsed] James A. Carey, Vernon Center."

The defendant received this letter and note, but did not go to Vernon Center to see the deceased until October 3, 1886, which was Sunday, and in the meantime he did nothing about signing or getting the money on the note. He took the note with him when he went to Vernon Center, and there the note in suit was drawn by deceased, signed by defendant, and indorsed by deceased as follows:

"$300.                          Vernon, N. Y. Oct. 4, 1886.

"Three months after date I promise to pay to the order of James A. Carey, three hundred dollars, at the National Bank of Vernon. Value received. With interest.

"[Signed]                        Robert H. Hadcox.

"[Indorsed] James A. Carey."

The note inclosed in the letter and the letter were retained by defendant until the trial. The only difference in the two notes was in their dates (September 24th—October 3d) and time of payment (four months —three months). The note was discounted at the Vernon Bank October 6, 1886, and the money was paid to some one, but there is no direct evidence as to who received it; the bankmen who did the business being dead. When the note became due, January 7, 1887, it was not paid, and was protested. It was paid February 2, 1887. Evidently the deceased paid it, because it was among his papers after his death, which occurred April 18, 1890. The deceased at the time of the transaction with reference to this note was a man of considerable property. He held two notes against the defendant—one for $300, dated February 4, 1886, and another for $450, dated June 29, 1884—and one note against plaintiff's husband for $933, dated July 21, 1885. All these notes were past due at the time the letter was written and the note in suit was given.

The defendant could have testified what the note in suit was given for, and whether it was what it purported to be, or was an accommodation note, but was excluded by the death of the deceased, under section 829 of the Code of Civil Procedure. The defendant's wife, who was present when the note was given, heard nothing said by her husband or father on this subject then or at any other time, so far as appears. Other evidence was given on either side bearing upon the question at issue, and then the case was submitted to the jury under a charge which was unobjectionable, so far as the main body of it was concerned. The only complaint made is as to a request made by defendant's counsel, and the response of the court thereto. In the main charge the trial justice called attention to this letter and the inclosed note, and left the jury to say whether deceased by the letter requested defendant to make the note inclosed for the benefit of deceased, or because he owed deceased, or to enable defendant to get the money and use it himself. He called attention to the giving of the note in suit October 3, 1886, and left it to the jury to say whether there was a consideration for defendant's signing the note, or whether it was accommodation paper. So far the case was properly submitted to the jury  The defendant's counsel, however, was not satisfied with this general submission of the question, and at the close of the main charge requested the court to charge the jury, "If the note in suit was given in pursuance of the letter bearing date September 24, 1886, that the defendant is entitled to a verdict." The court responded, "I will so charge, but I leave it as a question of fact for them to find." And to this there was an exception by the plaintiff's counsel. The meaning of the response was, and must have been so understood by the jury, "I charge the proposition, if the jury find that the note in suit was given pursuant to the letter of September 24, 1886." The response would have been meaningless upon any other interpretation of the language. The jury could not well fail to find that the note was given pursuant to the letter, and therefore the jury were told, in effect, to render a verdict for the defendant. This was a comprehensive way of disposing of the issue as to which so much evidence had been taken, and over which such a struggle had been indulged in; and, unless it was correct as matter of law, the judgment must be reversed and a new trial ordered. It is not a case where counsel seek to reverse a judgment by reason of a response that they may be said to have entrapped the trial court into by making a request. The response was to a request made by the successful party, and to which the appellant's counsel objected and excepted.

We are now to inquire whether, the note in suit having been given pursuant to the letter, the defendant was entitled, as a matter of law, to a verdict in his favor. If the jury, upon any theory of the case, might have properly rendered a verdict for the plaintiff, then the response to the request was erroneous. It seems to us the trial judge stated the propositions fairly in the body of his charge as to the letter and the note inclosed therein. The note in suit took the place of the one in the letter. He told the jury, in effect, to inquire and find whether the note was given for the benefit of the deceased, or for the benefit of the defendant, or upon an indebtedness by defendant to the deceased. The response to the request told the jury, in effect, that the note, if

given pursuant to the letter, was necessarily so given for the benefit of deceased. It must be remembered that there was no evidence as to what, if any, conversation had passed between the defendant and the deceased before the letter was written and the note sent. The jury, from all the evidence, might infer there had been some talk on the subject. They were not bound to infer there had been no such talk. The letter was not inconsistent with the idea that prior thereto defendant had asked deceased for a loan of $300, and suggested deceased's getting the money from Frank to loan defendant. Read the letter in this light:

"I wish you would get the money on this note as I am short, and don't like to ask Frank for any. If you get the money on the note I will take care of it at maturity if you can't."

The letter was not inconsistent with the idea that prior thereto the deceased had asked defendant to get some money from the bank on a note to pay upon defendant's indebtedness to deceased, as he was short and needed some money to use. It will be remembered deceased held a past-due note made by defendant for just this amount, $300. He could not get the old note discounted, as it was past due. And it may be said, as to both these two theories, that the letter, by the postscript, seems to suggest that defendant himself pay the note when due, if he could, and deceased would take care of it if defendant could not. This is not quite consistent with the theory that the note was for the accommodation of deceased purely. And again, the note, when it came due, was not paid at once, or taken care of by deceased, but was allowed to go to protest, and to remain unpaid for a month before deceased finally took it up. And again, if the note was one made purely for the accommodation of deceased, why did he preserve it after he took it up, and why was it found after his death, which occurred a few years later, among the deceased's papers, in an envelope with the other two notes which he held against defendant? Again, if the note was purely for the accommodation of deceased, why didn't he make it and have defendant indorse it? He was a man of property—worth more, evidently, than defendant—and the note was payable and was discounted at deceased's, and not defendant's, bank. These considerations seem to lead to the conclusion that this note was not given for deceased's accommodation, but in some way for the benefit of defendant; and this would be true if defendant himself had the money on the note at the time, or if it was given to get money to apply on defendant's indebtedness to deceased. The letter may be counted as consistent with defendant's theory that the note was an accommodation note for deceased's benefit, but it was for the jury to find which was the correct theory of what the note was given for, and not for the court to decide. A verdict supporting either of the three theories, assuming the note was given pursuant to the letter, would be supported by the evidence and the inferences which the jury might properly draw from all the circumstances proven in the case.

Apparently there are stronger reasons for believing that one of the plaintiff's theories was the correct one, as we have suggested, but we do not need to go to that length. It is sufficient that the jury, under the evidence and the letter, might have found the note given for a good consideration, and not for the accommodation of the deceased. Our con-

clusion is, therefore, that the response to the request in question was erroneously made, and that the judgment and order must be reversed.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide the event. All concur.